## LAURIS TENDRUP, RESPONDENT, *v.* JOHN STEPHENSON COMPANY (LIMITED), APPELLANT.

*Liability of a corporation for its neglect of duties which it is bound to perform, without regard to the position of the agent performing them.*

In an action, brought by a carpenter employed in the car factory of the defendant, to recover damages for personal injuries which were alleged to have been sustained by reason of the negligence of the defendant, it appeared that the plaintiff worked on the first floor of the building, and, in the course of his employment, was called upon from time to time to go into the basement. The first floor, which did not wholly cover the basement, was open at one end, and in order to allow the workmen to go up and down a wooden stairway was made for use between the first floor and the basement, and was placed with the bottom resting on the basement floor and the top resting against the beam which supported the boards of the first floor, the stairs being fastened below by wooden cleats nailed to the floor, and above by means of nails.

On the day of the accident the plaintiff, who was at work on the first floor, went down this stairway to the basement in order to saw some boards, and after performing this task started to return by the same stairs. When he had nearly reached the top the entire steps fell under his weight and he was thrown backwards and knocked senseless. On that day the defendant, the president of the corporation, had directed a workman to change the position of the stairs about five feet, and the workman had done so, putting cleats around the bottom and securing it "good and fast." The stairway was in this position when the plaintiff went down into the basement. Before he went up again another workman, who had been ordered to remove a bulky piece of machinery, changed the position of this flight of steps so as to get them down out of the way, but without any specified direction so to do. He then left them, unscrewed, only long enough to go a short distance for his hammer and nails, during which time the accident occurred.

*Held,* that as the act of removing the stairway was authorized by the defendant the servant occupied the place of the corporation, and the latter was liable for the manner in which it was performed, and that a judgment, entered upon the

verdict of a jury in favor of the plaintiff, should be affirmed. (BARTLETT, J., dissenting.)

*Pantzar* v. *Tilly Foster Iron Mining Company* (99 N. Y., 368); *Berea Stone Company* v. *Kraft* (31 Ohio St. 287) followed; *Crispin* v. *Babbitt* (81 N. Y., 516) distinguished.

APPEAL from a judgment entered upon the verdict of a jury, for $3,500 damages, rendered at the New York Circuit, and entered in the office of the clerk of the city and county of New York on November 17, 1887, and from an order denying a motion for a new trial, made upon the minutes of the justice presiding at the circuit, and entered in the same office on the 16th day of November, 1887.

The facts in this case are fully stated in the dissenting opinion of BARTLETT, J.

*William Allen Butler*, for the appellant.

*J. Edward Swanston*, for the respondent.

BRADY, J.:

It will be perceived on reading the opinion of BARTLETT, J., that the act of removing the stairway was one authorized by the defendants; the negligence of the so-called fellow-workman being his leaving the stairway without a guard or notice, and without being fastened, while he was seeking the means of finishing his work of removal. This makes a vast difference between this case and that of *Crispin* v. *Babbitt* (81 N. Y., 516), to which Justice BARTLETT refers; in the latter case the injury was occasioned by an act with which the master had no connection, directly or indirectly, and was one of carelessness. The fellow-workman carelessly let on steam, and the plaintiff was injured. The true rule, I apprehend, said CHURCH, Ch. J., is to hold the corporation liable for negligence in respect to such acts and duties as it is required to perform as master, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter is liable for the manner in which they are performed. Here it appears that Jeblick, the fellow-workman, had been ordered by the defendants' foreman to put a machine in position, to do which it was necessary to remove the stairs. They

were removed, and hence the accident, for the reason that they were not secured, of which the plaintiff was ignorant. The distinctions made by the cases bearing upon the obligations and responsibilities of employers for the carelessness of one fellow-workman resulting in the injury of another in the same common employment, are somewhat shadowy, and, therefore, difficult of application; but where the act causing the injury is an independent one, and done by order of the employer or his *alter ego*, as in this case, the liability of the employer seems to be settled, particularly when it is within the principle that he owes his servant the duty of furnishing him a safe and proper place to prosecute his work. (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y., 368.) In addition to this, it may be said that the case of *Berea Stone Company* v. *Kraft*, 31 Ohio St., 287), and quoted by EARL, J., in his dissenting opinion in *Crispin* v. *Babbitt* (*supra*), exactly hits this case. Indeed, that opinion will be found sustained by authorities, the doctrines of which make the defendants here liable for the plaintiff's injuries. I am decidedly in favor of the affirmance of the judgment.

DANIELS, J., concurred.

BARTLETT, J. (dissenting):

There was sufficient evidence to warrant the finding of the jury in favor of the plaintiff, unless it ought to have been held that his injuries were sustained in consequence of the negligence of a fellow servant, for which the employer was not responsible.

The plaintiff was a carpenter employed in the car factory of the defendant. He worked on the first floor of the building, and, in the course of his employment, was called upon from time to time to go into the basement. The first floor did not wholly cover the basement, but was open at one end. In order to allow the workmen to get up and down, a wooden stairway was made for use between the first floor and the basement, and was placed with the bottom resting on the basement floor, and the top resting against the beam which supported the boards of the first floor. These stairs were fastened below by wooden cleats nailed to the flooring, and above by means of nails. The plaintiff, who was at work on the first floor, went down this stairway to the basement in order to saw some boards. After performing this task he started to return by the same stairs.

FIRST DEPARTMENT, JANUARY TERM, 1889.

When he had nearly reached the top the entire stairway fell under his weight and he was thrown backward and knocked senseless. There is no doubt as to what was the cause of the accident. The stairway had been constructed so that it could be moved from one place to another without much difficulty, and it had previously been moved several times, generally, however, if not always, for the purpose of getting it out of the way for the time being. On the day of the accident Mr. John Stephenson, the president of the corporation, had directed a workman named Torgensen to change the position of the stairs about five feet, and Torgensen had done so, putting cleats around the bottom and securing it "good and fast." The stairway appears to have been in this position when the plaintiff went down into the basement. Before he went up again, another workman, named Jeblick, pried off the cleats, unfastened the stairs, and after moving them about four feet put them up unfastened, but in the right position against the beam. Leaving them in this insecure condition, he stepped away a short distance to get his hammer and nails. Meantime the plaintiff, ignorant of what had happened, had partly ascended the stairway, and, before Jeblick was able to get back, the accident had occurred.

No specific order to remove the stairs or interfere with them in any respect, had been given to Jeblick, but the foreman had told him to put a large, bulky machine, called a planer, in position, and to do this it was necessary to take the stairs away from the place in which they had been put by the direction of Mr. Stephenson. It was in consequence of this order to remove the planer that Jeblick undertook to change the position of the stairs. Upon this evidence, it was plain enough that the injuries to the plaintiff were the direct result of negligence on the part of Jeblick, a co-servant in the same employment. The learned trial judge, however, instructed the jury that if Jeblick, who moved the stairs, was guilty of negligence in the matter, his negligence was the negligence of the defendant; and he based this portion of his charge expressly upon the rule that acts which the master, as such, is bound to perform for the safety and protection of his employees cannot be delegated so as to exclude the master from liability to a servant who has been injured by an omission to perform the act of duty. It is necessary to

inquire, therefore, what obligation the defendant owed to the plaintiff in respect to the stairway which fell. A master owes his servant the duty of furnishing him a safe and proper place in which to prosecute his work. (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y., 368.) This includes the obligation to provide a safe and proper means of access to such portions of the master's premises as the servant is called upon to go to in the course of his employment. The stairway in the present case, when fastened in place as it was evidently designed to be at all times when in use, was not only appropriate for the purpose it was intended to serve, but safe for the workmen who had occasion to pass up or down. The accident was not attributable to any defect in material or construction, but solely to the fact that the stairs had been left temporarily unfastened. I do not think it can fairly be held that the master, under the circumstances disclosed by the evidence, failed to supply suitable instrumentalities for the safe performance of the work required. But, says the learned counsel for the respondent, it was absolutely necessary for the protection and safety of the workmen that the defendant should not only provide a safe stairway, but that it should be kept at all times in a safe and secure condition. In the first instance, however, the defendant was not bound to do more than to furnish a stairway which should be safe. This obligation was fulfilled. If proper care were used in the selection of skillful and competent workmen to assist the plaintiff in the performance of his duties — and there is no suggestion to the contrary — the fact that the negligence of one of these co-servants had rendered the place where the work was to be done unsafe, did not impose any further duty upon the employer in the absence of notice, actual or implied. Upon being notified that the premises had thus been rendered unsafe, or after such a lapse of time that notice would be inferred, the master would become liable for a failure to maintain the safety of the structure, but not until then, if the place provided was safe and suitable at the outset, when the employment of the servant began.

There is no reason to suppose that the president, or any other officer of the defendant corporation, ever contemplated that the stairway in question would be used by any of the workmen, except when it was securely fastened in position. It is not pretended or

suggested that anyone ever directed or sanctioned its employment under any other circumstances. A fellow-servant of the plaintiff who had been ordered to remove a bulky piece of machinery, changed the position of this flight of steps to get them out of the way, but without any specific direction so to do, or, as he testified, out of his own idea entirely. He then left them, unsecured, only long enough to go some eight or nine feet for his hammer and nails, when the accident occurred; and it cannot reasonably be contended that this brief period of insecurity was sufficient to give the defendant notice that the stairway had become unsafe. To loosen the fastenings, as Jeblick did, move the steps a few feet and leave them in position, and, therefore, apparently secure, without warning to any one, was to set a trap for those who might have occasion to come from the first floor of the factory to the basement, or go from the basement to the first floor; but this trap was the contrivance of a co-servant, and in no wise the result of that personal negligence on the part of the employer which is essential to the maintenance of such an action as the present. (*Cahill* v. *Hilton*, 106 N. Y., 512.)

I think that the doctrine of *Crispin* v. *Babbitt* (81 N. Y., 516) applies, and that the act of Jeblick in moving the stairway was the act of a mere operative, in the course of his employment, and not in the performance of a duty resting upon the master. For his failure to secure the steps as he should have done, the defendant is no more legally responsible under the law to the unfortunate plaintiff, than a railroad company would be to one of its employees who was injured in an accident solely due to the negligence of a fellow-servant in leaving a switch unlocked.

In my opinion the judgment should be reversed.

Judgment affirmed.